(46 Misc. Rep. 25.)

ROE et al. v. REDNER et al.

(Supreme Court, Trial Term, Orange County. December, 1904.)

1. EASEMENT—DEED—PRIOR GRANT.

Where an owner of land granted a right to the owner of a dam to keep, maintain, rebuild, and repair the same, the grantee of the owner takes subject to the grant.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses; §§ 162, 166, 171.]

2. SAME—CONSTRUCTION.

Where an owner of land granted a right to the owner of a dam to keep, maintain, alter, rebuild, and repair the same, whether a dam rebuilt after a former dam has been carried away is on the same location is immaterial.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, §§ 162, 166, 171.]

3. SAME—ADVERSE USER.

Where a right to build and maintain a dam has been granted by the owner of land, the question of its proper location is settled by an adverse user of more than 20 years.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, §§ 193–198.]

4. SAME—WATER FROM DAM.

Where an owner of land granted rights to maintain a dam to upper riparian owners, reserving a right to the natural flow of water from such dam without any material diminution or waste, his grantee is not entitled to have the flow increased by the stored waters, where the natural flow of the stream over the spillway of the dam is not obstructed.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, §§ 193–198.]

5. SAME—FLOW OF WATER.

Where a grant of a right to maintain a dam is given, that the flow of water will be diminished by evaporation is within the contemplation of the parties, though the owner of the dam contracts not to affect the grantor's lower mill privilege.

Action by Roe and others against Redner and others. Judgment for defendants against plaintiffs, and in favor of defendant ore company against defendant Redner.

Walter C. Anthony and John J. Beattie, for plaintiffs.
Frank R. Gump and William Vanamee, for defendant Redner.
Allison Butts, for defendant Forrest.

MADDOX, J.  As constructed in 1880, the dam at the outlet of Popolopen pond is upon the site of the previous one, which "gave way" over 40 years ago, and the construction of which was provided for, and the right to "keep, maintain, alter, rebuild and repair" was created in and by the conveyance and agreement, dated October 21, 1817, from Havens to Suydam and Wyckoff, and Redner's fee rights, if any, in and to the lands upon which said dam or any part of it stands, are subject to that grant, and to the right so created "to keep, maintain, alter, rebuild and repair" the same, the ore company having succeeded to the estate and right of Suydam and Wyckoff in relation to said dam and the land upon which it was so constructed.

The deeds from Wyckoff's descendants, Sergeant, Bright, and others, to Redner, convey no title to the premises in question here, and are void.  From the proofs and from the lapse of time, the presumption that the whole title was vested in Suydam prior to his death must be indulged in, and that must obtain in support of the ore company's title.

The dam is the property of the ore company, is upon its lands, and, even if there were any serious question as to its precise location, that would not avail the defendant Redner, for these reasons: There was the right to alter and to rebuild the former dam; then we have the lapse of time, and the possession of and the control by the ore company for more than 20 years, adversely to any right of Redner; and the doctrine of an estoppel in pais would operate against him, he having stood by during such construction and acquiesced therein.

As between Redner and the electric company, a different holding upon the question of title to the lands upon which the dam stands would be called for.  As between them, the principle of res judicata would obtain, since that question was necessarily involved in the previous litigation in which they were parties; but that does not apply to the plaintiff Roe, whose title comes through the same chain as that of the ore company's.  The determination of that question is not, however, necessary here, and would not be decisive upon the rights claimed by the plaintiffs as against the ore company.

There remains but the question as to what rights, if any, the plaintiffs have, perforce of the covenant in the Phelps deed to the ore company, to the waters impounded and stored in the pond by reason of said dam, and plaintiff Roe's title is likewise subject to the right of the ore company to keep and maintain a dam at the outlet of Popolopen pond.  The ore company concedes that "plaintiffs are entitled to the natural flow of the water without any material diminution or waste," but claims that "they are not entitled to have the flow increased by the stored water," and that plaintiffs are now getting the natural flow of the stream over the spillway of the dam. There had been no dam at the outlet of Popolopen pond for about

20 years prior to the construction of that now standing; in dry seasons there was not a sufficient natural flow of water to operate the machinery in the mill formerly owned and operated by plaintiff Roe's predecessors in title; there is not now, and since 1880 there has not been, a sufficient flow of water for that purpose in dry seasons, unless the stored and impounded waters in the pond are released; and there is no proof of any interference with the natural flow of the stream since the plaintiff Roe acquired title to the premises formerly known as the "Miller Mill," conveyed to him by the grantee of Annie B. Phelps, who had, prior to the conveyance to Roe's grantor, conveyed to the defendant ore company the lands and rights hereinbefore referred to, together with other lands. Roe took his title subject to the grant of lands and rights to the ore company in relation to said dam and the storing up of water thereby; he has succeeded to all of the rights which said Annie B. Phelps had after the aforesaid conveyance to the ore company, and to such rights as have accrued to her of himself by reason of the covenant in said deed contained, as to the maintenance and control of said dam and of the waters stored up because thereof. There is no ambiguity in said covenant, and its language is to be interpreted according to the ordinary and popular meaning and significance thereof, so as to effectuate the intention of the parties. By the covenant in question the ore company, for itself, its successors and assigns, agreed to "erect, construct and maintain a dam at the outlet of said pond of not less than eight (8) feet above the present high-water level and that they shall not at any time or in any way use the premises or rights so granted * * * or permit the same to be used, so as to injure or impair the mill privilege which" the grantor then had, "or which she or her heirs, executors, administrators or assigns at any time" thereafter "might have or erect upon the stream through which the waters of said pond discharge into the Hudson river, or so as to impair or diminish the flow of the water in any part of said stream, and that the waters of said pond shall not be drawn off by them (the party of the second part), their successors or assigns at unreasonable or unseasonable times or in unreasonable quantities and that any and all water which shall be drawn from said pond by them, their successors or assigns, shall not be permanently diverted from their present natural channel, but shall without material diminution or waste be returned thereto at some point in such present natural channel or stream within half a mile from said Popolope's pond." The mill privilege which the grantor Phelps then had was downstream from the pond about six miles, and a very necessary essential to the enjoyment of said privilege was a sufficient flow of water to propel the water wheel and machinery, since it was a mill operated by water power. The defendant covenanted not to "use the * * * rights so granted," which included the right to store up the water which would naturally flow through the stream and past the grantor's mill, "so as to injure or impair the mill privilege" which she then had, or which she "or her * * * assigns" thereafter might have; and by the same instrument Mrs. Phelps granted all her "right * * * to draw

water from said Popolope's pond for propelling machinery or otherwise so far as heretofore granted to her in any way or by any person." Clearly it was not contemplated that the natural flow of the stream was to be increased for her benefit by the storage of water, for she granted away any right she might have had to draw water stored by reason of said dam. By the construction of the dam a much greater surface area of water was created, and hence diminution by evaporation was made greater, and the natural flow was lessened just so much. But that was within the contemplation of the parties, since that is the necessary consequence of the construction of said dam; indeed, that increase of surface area is permitted, and is in fact called for, "to the extent of ten feet perpendicular height above the meadow contiguous to said pond," by the express language of the grant. By that covenant the ore company was not to use, or permit to be used, the premises and rights so granted so as to injure or impair such mill privilege. What privilege did she have, so far as relates to the use of the flow of the stream for mill purposes, other than the natural flow of the water? By the covenant she is not to have anything more than that, and it does not appear that such natural flow has been injured or impaired. If she was to have a right to the use of the stored waters, why did she grant "any and all privileges, easements and claims which" she may have acquired through James Miller and John Brooks, or either of them, or from or through any other party or parties whomsoever, "and also all right * * * to draw water from said Popolope's pond for propelling machinery or otherwise so far as heretofore granted to her in any way or by any person"? Whatever right or privilege remained to her has come by mesne conveyances, to the plaintiff Roe, and it is not shown that he has since acquired any other or greater right or privilege. Plaintiffs have not shown any "use" by the ore company of "the premises or rights so granted * * * so as to injure or impair the mill privilege which the" grantor then had, and, as said before, it does not appear that any other right of privilege has since then accrued to Roe. There was, then, the ruins of the old dam, and she had only the natural flow of water, which, as we have seen, was insufficient for the operation of her mill in all seasons, and that natural flow was the only privilege, so far as relates to the running water, which she then enjoyed. True, she had the right to "erect, maintain, alter, rebuild and repair" a dam at the outlet of Popolopen pond, but that right she conveyed to the ore company, together with "all right" she then had "to draw water from said * * * pond for propelling machinery or otherwise. * * *" The ore company has fully kept and performed the covenant on its part as to the construction of the dam, and has not been shown to be guilty of any breach or disregard of any right which the plaintiffs or either of them have.

Judgment for defendants against the plaintiffs, and in favor of the defendant ore company as against the defendant Redner, in accordance herewith. Let decision be settled on notice, at which time the question of costs will be passed upon.

Judgment accordingly.